# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0702-17T1

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

K.W.,

     Defendant-Appellant,

and

M.W.,

     Defendant.

_____

IN THE MATTER OF S.W., J.W.,
and A.W.,

     Minors.

_____

Submitted February 6, 2019 – Decided March 15, 2019

Before Judges Currier and Mayer.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FN-02-0146-14.

Joseph E. Krakora, Public Defender, attorney for appellant (Andrew R. Burroughs, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jason W. Rockwell, Assistant Attorney General, of counsel; Sara M. Gregory, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor S.W. (Meredith A. Pollock, Deputy Public Defender, of counsel; Cory H. Cassar, Designated Counsel, on the brief).

PER CURIAM

Defendant K.W. (Kurt)[1] appeals from two fact-finding orders determining he abused and neglected his daughter, S.W. (Sasha). After reviewing the contentions in light of the record and applicable principles of law, we affirm.

Kurt and defendant M.W. (Mariah)[2] are married and the parents of Sasha and her two younger brothers, J.W. (Jerry) and A.W. (Alan). In October 2013, plaintiff New Jersey Division of Child Protection and Permanency (Division)

---

[1] We use pseudonyms and initials for the privacy of the parties. R. 1:38-3(d)(12).

[2] Mariah did not appeal from the fact-finding order.

A-0702-17T1

received a referral from a staff member at St. Clare's Hospital advising that Sasha, twelve, was admitted for cutting herself and expressing a suicidal ideation. Sasha recounted to staff members that Kurt touched her vagina, buttock, and chest when she was nine years old and in her parents' bed. The day after this occurred, Sasha stated she told Mariah what had happened, but Mariah told Sasha that Kurt "made a mistake" and "may have been drunk when he had touched her."

The hospital staff member also told the Division that: 1) Mariah stated Kurt is an alcoholic and "get[s] drunk every day"; 2) Kurt has a history of physically abusing Sasha, Jerry, and Mariah; 3) Kurt hit Sasha with his hand four to five months ago, causing bruises; and 4) Kurt is bipolar.

Division caseworker Stephanie Wilson investigated the report, interviewing Kurt, Mariah, and Jerry. Kurt stated Sasha started scratching herself several months earlier, and that over the past two weeks, she "began cutting herself with a razor on her arms, then her stomach and legs," causing the parents to take their daughter for a psychiatric evaluation. During the evaluation, Sasha disclosed she planned to take Kurt's prescription medications to commit suicide. Kurt also told Wilson he suffered from depression and was under the care of a psychiatrist. He denied drinking to intoxication, explaining

he could not have more than two alcoholic beverages in a week because of his psoriasis medicine.

In her interview, Mariah stated Sasha began scratching herself at the beginning of the summer, but Mariah did not take her to a therapist or counselor. Mariah thought Sasha stopped scratching herself, but learned that after she broke up with her boyfriend at the end of August 2013, Sasha began cutting herself with a razor. Mariah hid all of the sharp items in the household and took Sasha for a psychiatric evaluation. Sasha was subsequently transported to St. Clare's because during the evaluation she expressed suicidal ideations.

Mariah further reported to Wilson: 1) Kurt had been diagnosed with ADD, bipolar disorder, and depression; 2) drank two rum and cokes a week; and 3) prior to Kurt starting a new medication, she was concerned about his drinking because he used to drink every day.

Wilson also interviewed eight-year-old Jerry at his home. Jerry said Kurt drank beer or soda and "has a big bottle with water that he puts into his soda." Wilson subsequently observed an empty 1.5-liter bottle of rum in the home. Jerry also stated Kurt hit him with an open hand two years ago, but the slap did not leave marks or bruises. Jerry denied Alan had been hit or spanked.

4

Wilson interviewed Sasha at St. Clare's, asking her about the cutting, Kurt's physical abuse, any domestic violence in the household, and her report of sexual abuse.

Sasha related she was in the hospital because of the cutting and her plan to overdose on Kurt's prescription medication. She stated she felt bullied at school. Sasha explained she cuts herself to "feel something" and "partly to feel alive," and she hid the cutting from her family and friends. She originally scratched herself with various objects, but had recently begun cutting herself with a razor. Wilson inspected the cuts on Sasha's forearms and observed fifty small cuts, likely from a razor, along with scars on the top of her forearms from scratching herself.

Sasha also told Wilson that Kurt drank two cups of rum and coke every night, and he sometimes got mad, yelled, and threw objects. Sasha stated Kurt used to hit her with an open hand on her face, leg, butt, and arm, but he had stopped four to five months ago after beginning a new medication. Sasha said Kurt did not hit Alan, but spanked Jerry when he was younger.

Sasha denied any domestic violence in the household, but described two incidents between Kurt and Mariah. The first involved Kurt pinning Mariah against the refrigerator during an argument two to three years earlier. The

A-0702-17T1

second occurred in 2012, when Kurt was holding a metal rake and threatened to hit the walls with it. Sasha called the police, who came to the home. Mariah declined to seek a temporary restraining order.

Sasha also discussed the alleged incident of sexual abuse. Sasha stated she went into her parents' bed when she was eight or nine. While in the bed, Kurt touched Sasha under her underwear in "the front and the back" before touching Sasha's vagina for a few minutes. Sasha explained she attempted to get away from Kurt, but he pulled her closer. Sasha stated when Kurt was done, she ran into her brother's room, grabbed her knees, and started crying and shaking. When Mariah entered the room to ask Sasha what was wrong, Sasha told her Kurt had touched her intimate parts. Mariah "laughed it off" and said it was a mistake. Sasha reminded her mother of the incident "once or twice," but Mariah told Sasha not to tell anyone.

In interviews with the police and the Bergen County Prosecutor's office, Sasha reiterated her allegations of sexual abuse. After the interviews, Mariah told Sasha this was "all her fault." Sasha asserted Mariah took away her cellphone because she was worried Sasha would tell people what happened. Mariah told Wilson she did not know if she could fully support Sasha because she did not believe Sasha's allegations about Kurt.

6

In his interview with the prosecutor's office, Kurt denied inappropriately touching Sasha. However, Kurt later described an incident where he was "half asleep" and put his hand on Sasha, believing her to be Mariah, before Sasha brushed it away. Kurt was subsequently charged with aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1), and endangering the welfare of a child, N.J.S.A. 2C:24-4. He was remanded to jail pending the posting of bail.

The Division was concerned for Sasha's safety if she remained in the home, and asked Mariah if there was a family member that Sasha could stay with. Because Mariah did not want her mother or sister to know about the situation, the Division initiated a Dodd[3] removal, and Sasha was placed with her maternal grandmother (Krystal).

During a visit by Division caseworkers in January 2014, Sasha recounted a second incident when Kurt inappropriately touched her. This event occurred the week before the original allegation. Sasha was again in her parent's bed with both her parents, when Kurt put his hands down Sasha's pajama pants and

---

[3] A Dodd removal is an emergency removal of a child from the home without a court order, pursuant to the Dodd Act, which, as amended, is found at N.J.S.A. 9:6-8.21 to - 8.82.

touched her. She clarified she only told her mother about this incident and not the one reported to the Division in October.

In a comprehensive report, the Division substantiated the allegation that Kurt sexually, physically and emotionally abused and neglected Sasha, and the Division established the allegation that Mariah neglected Sasha. See Dep't of Children & Families v. D.B., 443 N.J. Super. 431, 441-42 (App. Div. 2015) (discussing the four-tier framework of "substantiated," "established," "not established," and "unfounded" allegations of abuse or neglect). Kurt and Mariah were prevented from having any contact with Sasha until further court order.

In the fact-finding trial, representatives of the Division and an evaluating psychologist testified. Additionally, Sasha's and Kurt's videotaped statements given to the prosecutor's office were played. Sasha testified in chambers, recounting her allegations of sexual abuse. Mariah offered the report from Sasha's psychological examination into evidence, but did not present any witnesses. Kurt did not present any evidence or witnesses at trial.

In a comprehensive forty-seven page written opinion issued July 25, 2014, Judge Margaret M. Foti found Kurt physically, sexually, and emotionally abused Sasha. She also concluded Mariah failed to protect Sasha from Kurt's abuse.

A-0702-17T1

Judge Foti found Sasha's "testimony about these two acts of sexual abuse to be very credible, given that her in-court account of the abuse was highly consistent with reports that she made in the past." She noted the "wealth of evidence in the record to corroborate [Sasha's] account of abuse," and referred to the examining psychologist's conclusion that there was clinical support for sexual abuse. The judge stated she was "not troubled" at the timing of the two disclosures of sexual abuse because she was satisfied with the psychologist's "uncontroverted explanation that a child's account of incidences of abuse is not always exact," and the account "will vary depending upon the child's memory at the time."

In addressing the allegation of physical abuse, Judge Foti noted "the record is replete with credible and/or corroborated reports from both [Jerry] and [Sasha] that [Sasha] was very often the victim of . . . [Kurt's] physical abuse." (emphasis in the original). The judge recounted the incidents of Kurt striking Sasha with a cellphone in the head, pushing her against the wall and hitting her in the arm and stomach after Sasha covered her brother's mouth for "being loud," and Kurt striking her in the vaginal area. The judge found those particular instances were "excessive corporal punishment" that "exceed[ed] the bounds of parental autonomy needed for child-rearing." She also noted "[the psychologist]

relied on these specific examples to opine that physical abuse was clinically supported."

In its finding of emotional abuse, Judge Foti referred to Kurt calling Sasha "ugly," "stupid," and a "slut," likely added to Sasha's poor self-esteem as she was simultaneously being bullied at school. In referring to the psychologist's testimony, the judge determined Kurt "impaired [Sasha's] emotional condition by sexually abusing her and by exposing her to an environment fraught with physical abuse, alcohol abuse, and domestic violence."

In addressing the charges leveled against Mariah, Judge Foti concluded she made "zero effort" to address Sasha's cutting, her claims of sexual abuse, and the domestic violence in the household. The judge found "all of these failures directly or indirectly facilitated or contributed to [Sasha's] physical, sexual, and emotional abuse, making [Mariah] complicit by omission."

Following the trial, Sasha continued living with her grandmother. The no-contact order between Sasha and Mariah was vacated in September 2014. After months of psychiatric care and treatment, Sasha returned to Mariah's custody in December 2015. The no-contact order between Kurt and Sasha remained in place.

10

On February 10, 2016, at around 1:00 a.m., Sasha received text messages from Kurt in a group chat that included Mariah. The messages stated Sasha "ruined [Kurt's] life," the family's money was running low, and accused Sasha of lying, ruining Jerry and Alan's lives, and demanded Sasha "take back what [Sasha] said about [Kurt], or [Jerry and Alan] w[ould] never forgive [Sasha]." Thereafter, Mariah came into Sasha's bedroom and deleted the messages from her daughter's cellphone.

Sasha reported the incident to a counselor the following day. Sasha told the counselor that Mariah "blames her for what happened to the family," and that Sasha was considering recanting her allegations to "make things easier on the family."

In a subsequent interview with the prosecutor's office, Sasha stated Kurt came to the family's home "sometime in October," while Sasha was present. Sasha stayed in her room for most of Kurt's visit. Mariah told Kurt "you are not supposed to be here," but did not make Kurt leave or contact anyone about his visit. Kurt told Mariah he "did not care and was going to chance it," staying at the home and making dinner for the family. Kurt also warned Jerry and Alan not to say anything about his visit.

A-0702-17T1

Sasha described three other incidents, between September 2015 and January 2016, where Kurt came to the home while Sasha was present and Mariah allowed his entry. Sasha also reported that in December 2015 she texted Kurt on Mariah's phone, asking him to bring bagels to the home. Kurt replied, asking why Sasha was contacting him as they were not allowed to speak. Sasha ended the exchange, but the next morning Kurt texted Sasha "hi."

The Division interviewed Alan and Jerry about Kurt's visits to the home. Alan stated that even though Kurt was not permitted in the home, he still came even when Sasha was present. Alan also told the Division that Kurt talked with Sasha at the house and Mariah did not intervene. Jerry denied Kurt ever entered the home, but only stood at the front door when visiting. Jerry stated that although Sasha tried to talk to Kurt, he did not respond to her.

Kurt was charged with witness tampering, N.J.S.A. 2C:28-5(a), and disobeying a judicial order, N.J.S.A. 2C:29-9(a). Mariah was charged with witness tampering, N.J.S.A. 2C:28-5(a), disobeying a judicial order, N.J.S.A. 2C:29-9(a), and hindering prosecution, N.J.S.A. 2C:29-3(a)(3). The Division performed an emergency Dodd removal, placing Sasha, Jerry, and Alan in a foster home. On February 24, 2016, the Division released its investigative summary, substantiating an allegation of neglect against Kurt and Mariah.

On October 27, 2016, Judge Jane Gallina-Mecca conducted a fact-finding hearing. Sasha testified to Kurt's home visits, the text message exchanges between them, and Mariah's deletion of the February 10, 2016 text messages. Sasha also corroborated that Mariah did not remove Kurt from the home, tell him to leave, or warn him she would notify the authorities if he continued to stay. The judge found her testimony credible.

On February 10, 2017, Judge Gallina-Mecca produced a well-reasoned written opinion, finding Kurt and Mariah "subjected [Sasha] to abuse and neglect by exposing her to an imminent risk of substantial harm by violating the no contact orders." Judge Gallina-Mecca determined there was a "legal basis for continued court and agency intervention," and "a foundation for the Division to have continuing custody of [Sasha]."

In her reasoning, Judge Gallina-Mecca explained the no-contact order was "critical" to protect Sasha from further sexual, physical, and emotional abuse from Kurt. Therefore, Kurt's recurrent contact with Sasha was "grossly negligent" because it "re-victimized" her. Judge Gallina-Mecca also expressed concern over the content of Kurt's February 10, 2016 text messages to Sasha, finding Kurt "bullied" and "threaten[ed]" Sasha to recant her allegations and such conduct was "absolutely harmful" to his daughter.

A-0702-17T1

We uphold a trial judge's fact-findings if they are "supported by adequate, substantial, and credible evidence." N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 552 (2014) (citing N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008)). "We accord deference to fact[-]findings of the family court because it has the superior ability to gauge the credibility of the witnesses who testify before it and because it possesses special expertise in matters related to the family." N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448 (2012) (citing Cesare v. Cesare, 154 N.J. 394, 413 (1998)).

We begin with Kurt's assertions regarding the July 2014 order. He argues the trial court relied on uncorroborated statements and insufficient credible evidence in determining he sexually, physically, and emotionally abused Sasha. We disagree.

"Abuse and neglect actions are controlled by the standards set forth in Title Nine of the New Jersey Statutes." N.J. Div. of Youth & Family Servs. v. P.W.R., 205 N.J. 17, 31 (2011) (citations omitted). An "'abused' or 'neglected child'" is defined as one under the age of eighteen

> whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of [her] parent or guardian . . . to exercise a minimum degree of care . . . in providing the child with proper supervision or

guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof.

[N.J.S.A. 9:6–8.21(c)(4)(b).]

At a fact-finding hearing, the Division is required to prove "by a preponderance of the competent, material and relevant evidence" that the defendant abused and neglected Sasha. N.J. Div. of Youth & Family Servs. v. C.H., 428 N.J. Super. 40, 62 (App. Div. 2012).

We are satisfied the substantial credible evidence in the record supports Judge Foti's conclusion that Kurt sexually, emotionally, and physically abused Sasha. We affirm substantially for the reasons expressed in Judge Foti's thorough and well-reasoned opinion.

We are also unpersuaded by Kurt's argument that the trial court erred in finding his violation of the no-contact order established abuse and neglect. We defer to Judge Gallina-Mecca's credibility findings. We further note all of the family members admitted that Kurt came to and stayed at the family home, despite the order preventing him from doing so. We affirm substantially for the reasons expressed in Judge Gallina-Mecca's comprehensive opinion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

15